No. 23-1575

# United States Court of Appeals for the First Circuit

BIOPOINT, INC.,
Plaintiff - Appellee,

v.

ANDREW DICKHAUT; CATAPULT STAFFING, LLC, d/b/a
Catapult Solutions Group,
Defendants - Appellants,

LEAH ATTIS,
Defendant.

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
CASE NO. 1:20-CV-10118-RGS

## SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLEE BIOPOINT, INC.

James W. Bucking (110365)
Allison L. Anderson (1163695)
Rachel L. Kerner (1189218)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: 617-832-1000
jbucking@foleyhoag.com
alanderson@foleyhoag.com
rkerner@foleyhoag.com

Attorneys for Plaintiffs – Appellee, BIOPOINT, INC.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT ........................................................................................................1

    I.    MUTSA's Retroactivity Rule Invalidates Defendants' Argument That MUTSA Supersedes BioPoint's Chapter 93A Claim. ................................4

    II.    MUTSA's Lack of Retroactivity Further Bolsters That Defendants Waived or Forfeited Their Preemption Argument. .....................................5

CONCLUSION.....................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen USA, Inc. v. Karyopharm Therapeutics, Inc.*,
    35 Mass. L. Rep. 589 (2019) ...............................................................................5

*Forcier v. Metro. Life Ins. Co.*,
    469 F.3d 178 (1st Cir. 2006)............................................................................1, 4

*Milliman, Inc. v. Gradient A.I. Corp.*,
    No. 21-10865-NMG, 2022 U.S. Dist. LEXIS 234167 (D. Mass.
    July 11, 2022)......................................................................................................4

*Sammartano v. Palmas Del Mar Props.*,
    161 F.3d 96 (1st Cir. 1998)..................................................................................6

*Sanchez v. Foley*,
    972 F.3d 1 (1st Cir. 2020)....................................................................................1

*United States v. Orsini*,
    907 F.3d 115 (1st Cir. 2018)................................................................................6

**Statutes**

M. G. L ch. 93, § 42A, notes to 2018 amendment..................................................1, 4

The Massachusetts Uniform Trade Secrets Act ("MUTSA"), which Defendants-Appellants ("Defendants") contend supersedes Chapter 93A and therefore nullifies the bulk of Plaintiff-Appellee's trial victory, only applies after its effective date of October 1, 2018 and is not retroactive. Where trade secret misappropriation is continuous, beginning before and continuing after MUTSA's effective date, the statute does not apply (and therefore cannot preempt Chapter 93A). This point of law is crystal clear:

> Sections 42 to 42G, inclusive, of chapter 93 of the General Laws shall take effect on October 1, 2018, and shall not apply to misappropriation occurring prior to the effective date. **With respect to a continuing misappropriation that began prior to the effective date, said sections 42 to 42G, inclusive, also do not apply to the continuing misappropriation that occurs after the effective date**."

M. G. L ch. 93, § 42A, notes to 2018 amendment (emphasis added).

Also crystal clear is the trial court's decision—amply supported by the evidence which must be construed in Plaintiff-Appellee's favor—finding that in this case, the pattern of misconduct began before and continued after October 1, 2018. As a result, MUTSA does not apply, and therefore it cannot nullify Plaintiff-Appellee's Chapter 93A trial win.

The district court made several critical factual findings that Defendants do not challenge on appeal, and the Court construes such facts in the light most favorable to the appellee. *See Sanchez v. Foley*, 972 F.3d 1, 10 (1st Cir. 2020); *Forcier v. Metro. Life Ins. Co.*, 469 F.3d 178, 180 (1st Cir. 2006).

Starting in the summer of 2018, Defendants engaged in repeated acts of misappropriation as part of an overarching scheme to grow a competing business against Plaintiff-Appellee, BioPoint, Inc. ("BioPoint"). Through this ongoing pattern of misconduct, Defendants secured a multi-million-dollar deal with Vedanta, which served as the basis for the court's order that Defendants disgorge their Vedanta profits. As the court concluded, Defendants used BioPoint's trade secrets to obtain and sustain the Vedanta deal.

Specifically, beginning in the summer of 2018, Defendants Catapult and its managing director, Andrew Dickhaut, along with Dickhaut's fiancé, Leah Attis, began a scheme of misappropriating BioPoint's trade secrets, generally to give Catapult a head start in building its then-nonexistent life sciences business, and in particular, to develop a working relationship with Vedanta. RA 1825 ¶ 6; RA 1844-RA 1845 ¶¶ 59-62. For example, in March 2018—as Dickhaut revealed in a contemporaneous writing to Catapult's President—Attis helped Dickhaut place Defendants' first ever consultant at Vedanta. RA 1829 ¶ 15; RA 1844-RA 1845 ¶61. An employee at Vedanta confirmed that Catapult lacked the ability to meet its high-level consulting needs. RA 1828-RA 1829 ¶ 14. Attis therefore furnished Dickhaut with BioPoint's trade secret information to fill this gap. In July of 2018, Attis sent Dickhaut a confidential BioPoint document containing BioPoint's competitive strategy. RA 2834-RA 2880; RA 996-RA 999. The BioPoint draft

2

agreement that Attis shared with Dickhaut was similar in nature to the managed services provider ("MSP") agreement that Dickhaut would pursue with Vedanta in September 2018. RA 639-RA 640. In August 2018, Dickhaut/Catapult obtained from Attis a list of pharmaceutical companies that BioPoint had done business with, along with a list of the relevant skill sets needed for those clients. RA 2829; RA 853-RA 854. In September of 2018, Dickhaut solicited and received information from Attis concerning BioPoint's compensation practices for its consultants. RA 2725.

This pattern of misappropriation through 2018 culminated in Defendants pitching their MSP arrangement to Vedanta in September 2018 using BioPoint's confidential and trade secret information. RA 1844-RA 1845 ¶ 59; 62; RA 1847 ¶¶ 68-69. Defendants secured the deal with Vedanta later in 2018 based on this pitch. *See* RA 1829¶ 17; RA 1847-RA 1848 ¶ 71. The resulting MSP agreement served as the framework for the entire relationship between Catapult and Vedanta, and the foundation for all future Catapult placements with Vedanta, which were made under the MSP agreement. RA 1829-RA 1830 ¶¶16,18; RA 1845 ¶¶ 62-63; RA 1847-RA 1848 ¶¶ 70-71.

As the district court found, "[b]ut for the misappropriation of BioPoint's trade secrets, there would have been no ongoing relationship between Catapult and Vedanta. Catapult's entire relationship with Vedanta was enabled and sustained

with BioPoint information." RA 1847-RA 1848 ¶ 71. The court further concluded that "Catapult's Vedanta profits can be attributed to its misappropriation of BioPoint's trade secrets…." *Id*.

The court went on to find that after securing the MSP agreement with trade secrets purloined from BioPoint throughout 2018, Dickhaut in 2019 "**continued** to solicit Attis for information about BioPoint's pay rate and placement candidates to facilitate his work with Vedanta" and "Attis **continued** to supply Dickhaut with BioPoint's confidential information." RA 1830-RA 1831 ¶¶ 21-22 (emphasis added).[1]

## I. MUTSA's Retroactivity Rule Invalidates Defendants' Argument That MUTSA Supersedes BioPoint's Chapter 93A claim.

The notes to the 2018 amendment provide that MUTSA does not apply to a "continuing misappropriation" that began prior to October 1, 2018. M. G. L ch. 93, § 42A, notes to 2018 amendment. The findings of fact in the district court's exhaustive 29-page decision confirm Defendants' scheme began before and continued after October 1, 2018. *See Forcier*, 469 F.3d at 180 (accepting the facts

---

[1] The vast majority of evidence upon which the court relied came from text messages, emails and other documents between or among Attis, Dickhaut, and other senior Catapult executives. These were produced in discovery and submitted into the trial record. The court did not have the benefit of these materials at the motion to dismiss stage when the parties briefed the applicability of MUTSA to BioPoint's claims as pleaded in the complaint. *See Milliman, Inc. v. Gradient A.I. Corp.,* No. 21-10865-NMG, 2022 U.S. Dist. LEXIS 234167, at *4-5 (D. Mass. July 11, 2022) (acknowledging plaintiff's argument that "discovery may reveal that the timing of the misappropriation pushes their claims outside of MUTSA's effective date" and allowing them "to proceed with discovery before making a determination that MUTSA does not apply.").

4

as found following the bench trial and "draw[ing] all reasonable inferences therefrom in the light most favorable to the judgment.")

Case law confirms that MUTSA "does not have retroactive effect." *Amgen USA, Inc. v. Karyopharm Therapeutics, Inc.*, 35 Mass. L. Rep. 589 (2019). In *Amgen,* the plaintiff Amgen alleged that the defendant misappropriated its trade secrets beginning in February of 2018 when an Amgen regional sales manager resigned from the plaintiff and began working for defendant as Vice President of Sales. *Id.* at *7. Then in July and September of 2018, three Amgen district sales managers resigned from the company and joined defendant. *Id.* Amgen alleged that, before MUTSA's effective date of October 1, 2018, defendant began misusing Amgen's trade secrets to identify and recruit additional top-tier sales representatives, who then moved to defendant in November and December of 2018. *Id.* Relying on the retroactivity provision in the notes to the 2018 amendment of MUTSA, the court held that MUTSA did not apply because the misappropriation began in February 2018 (pre-dating MUTSA) and continued into December 2018 (post-dating MUTSA). *Id.*

## II. MUTSA's Lack of Retroactivity Further Bolsters That Defendants Waived or Forfeited Their Preemption Argument.

MUTSA's lack of retroactivity provides an independent reason why Defendants cannot show the clear and obvious error which is necessary to overcome its forfeiture of the preemption argument. *See* Appellee's Br. at 30-31.

5

The district court's finding of a Chapter 93A violation cannot be erroneous on preemption grounds, let alone be clearly erroneous, since MUTSA does not apply to the continuous chain of misappropriation that occurred here.

Further, this supplemental briefing exercise reinforces why Defendants waived or forfeited their preemption argument. This issue arose after all appellate briefing was completed, to the credit of the Court, but it is precisely the kind of issue that could have been identified below had Defendants raised their preemption argument in the many windows of opportunity to do so prior to final judgement. To the extent there is any room for questioning the continuity of Defendants' misappropriation scheme, that too is attributable to Defendants' tardiness in raising this issue. This presents yet another reason to read the record in the light most favorable to BioPoint. The doctrines of waiver and forfeiture exist precisely to prevent a situation like the one created by Defendants here. *See United States v. Orsini*, 907 F.3d 115, 119 (1st Cir. 2018) ("Waivers allow trial courts to narrow the issues and concentrate scarce judicial resources on genuinely contested matters — and when a trial court makes a reasoned decision, it is unfair to allow a party to subvert that decision by resurrecting a waived claim."); *Sammartano v. Palmas Del Mar Props.*, 161 F.3d 96, 97 (1st Cir. 1998) (explaining that issues of waiver are taken seriously because of "important considerations of equity and judicial efficiency").

**CONCLUSION**

For the additional reasons explained above, the Court should affirm the jury's verdict and the judgment of the district court.

Respectfully submitted,

BIOPOINT, INC.

*/s/ Allison L. Anderson*
James W. Bucking (110365)
Allison L. Anderson (1163695)
Rachel L. Kerner (1189218)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000
jbucking@foleyhoag.com
alanderson@foleyhoag.com
rkerner@foleyhoag.com

Dated: March 29, 2024

# CERTIFICATE OF SERVICE

I hereby certify that, on March 29, 2024, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by CM/ECF system:

Dana A. Zakarian
Christopher J. Hurst
Steven D. Procopio
SMITH DUGGAN CORNELL & GOLLUB LLP
55 Old Bedford Road, Suite 300
Lincoln, MA 01773
Tel: 617-228-4416
dana.zakarian@smithduggan.com
churst@smithduggan.com
sprocopio@smithduggan.com

Gabriel T. Dym
Eckert Seamans Cherin & Mellott LLC
2 International Pl
16th Flr
Boston, MA 02110-2602
617-342-6800

                                                    */s/ Allison L. Anderson*
                                                    Allison L. Anderson